IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONNIE CURTIS SULLIVAN, | § | |
| #2205946, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:21-cv-3121-X (BT) |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Ronnie Curtis Sullivan, a Texas prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred the petition to the United States magistrate judge for findings and a recommendation pursuant to 28 U.S.C. 636(b) and a standing order of reference. For the following reasons, the Court should **DENY** Sullivan's petition.

## Background

On May 27, 2016, City of Burleson police officers Adams and Dicke surveilled a Days Inn that has a history of drug trafficking. ECF No. 13-18 at 108-110, 151-153. They noticed a parked pickup truck that was registered to a Ronald Collier, who also has a history of drug trafficking. ECF No. 13-18 at 110-113, 134, 154. They then observed an SUV, driven by Sullivan, enter the parking lot and park next to Collier's truck. ECF No. 13-18 at 110-111, 153-154. No one exited the SUV or approached it. ECF No. 13-18 at 111, 119. After about twenty minutes, the SUV

drove off. ECF No. 13-18 at 111, 154. The officers found that behavior suspicious and followed the SUV, which abruptly turned into a gas station after noticing a marked vehicle in a nearby parking lot. ECF No. 13-18 at 111-112, 154. The SUV parked by the gas pumps. ECF No. 13-18 at 112-113, 128-129, 154-155. Officer Adams pulled in behind the SUV, and Officer Dicke noticed the driver make furtive movements towards the center of the vehicle. ECF No. 13-18 at 112-113, 155. Adams exited his car and approached Sullivan as he was getting out of the SUV. ECF No. 13-18 at 113, 129, 156-157. Adams asked Sullivan if he would speak with him, and they started a conversation. ECF No. 13-18 at 129.

Adams asked Sullivan if he had any drugs, guns, or dead bodies in the car, to which Sullivan responded that he did not have any guns or dead bodies. ECF No. 13-18 at 130-131. Adams asked if he could search Sullivan's vehicle. ECF No. 13-18 at 130-131. Sullivan hesitated, at which point Adams said, "something along the lines of, if you don't mind me searching, step to the back." ECF No. 13-18 at 131. Sullivan stepped to the back of his vehicle, where Dicke was. ECF No. 13-18 at 131, 159.

Sullivan confirmed to Dicke that there were drugs in the vehicle, and Dicke immediately relayed that to Adams. ECF No. 13-18 at 115, 135-136, 160. Adams found a magnetic pouch under the driver's seat which contained five bags of methamphetamine, amphetamine pills, and a meth pipe. ECF No. 13-18 at 115-117, 139-143. Sullivan had over $1,400 in cash—$40 in one pocket and the rest in the other. ECF No. 13-18 at 118, 138, 161.

Later, a Johnson County grand jury returned an indictment charging Sullivan with possession of a controlled substance with intent to deliver. ECF No. 13-8 at 14. Sullivan pleaded not guilty and proceeded to trial.

Sullivan testified at trial, and his version of events differed in some significant respects from the officers' report, especially regarding the vehicle search. Sullivan claimed that he was driving his wife's vehicle that day because he sold his Jeep Cherokee to a roommate of theirs, Jay Jordan, days earlier for $1500, which is why he had all that cash on him. ECF No. 13-19 at 13. He drove to the Days Inn parking lot to give his friend Heather a ride, but she did not come out after he called her. ECF No. 13-19 at 12. Heather used to date Collier, and Sullivan knew that, so, when Sullivan noticed Collier's vehicle in the parking lot, he called Collier as well to try and locate Heather, but Collier did not answer, either. ECF No. 13-19 at 13.

While waiting for Heather in the parking lot, Sullivan began cleaning his wife's vehicle—which was also driven by his daughter and Jordan—and found a black bag of methamphetamine, which he later discovered belonged to Jordan. ECF No. 13-19 at 14. At that point, Sullivan decided to leave. ECF No. 13-19 at 14. He put the bag of drugs under the seat and decided to throw it into the trash at the gas station. ECF No. 13-19 at 14-15.

Sullivan maintained that he did not give the officers permission to search his car. ECF No. 13-19 at 17. He denied that the drugs were his or that he had any intent to sell or deliver them. ECF No. 13-19 at 47, 68.

3

The jury found Sullivan guilty of possession of a controlled substance with intent to deliver and sentenced him to 50 years of imprisonment. *State v. Sullivan*, F50979 (18th District Court, Johnson Cty., Tex., June 20, 2018). ECF No. 13-8 at 54.

The Tenth Court of Appeals affirmed the conviction. *See Sullivan v. State, 622 S.W.3d 415 (Tex. App.—Waco 2020 pet. ref'd).* The Texas Court of Criminal Appeals (CCA) refused Sullivan's petition for discretionary review. *Sullivan v. State*, PDR No. 0358-20. Sullivan then filed a state habeas application, which the CCA denied without written order. *Ex parte Sullivan*, WR-92,746-01 (Tex. Crim. App. Oct. 27, 2021).

After his state habeas application was denied, Sullivan filed this federal habeas application under 28 U.S.C. § 2254. ECF No. 3. He makes the following claims for relief:

1. The trial court erred by overruling his objection to the jury panel when the State received the jury questionnaires over twenty-two hours before defense counsel;

2. The trial court erred in denying his motion to suppress;

3. His trial counsel was ineffective in the pretrial phase because he (a) did not request a copy of the jury questionnaires when they became available; and (b) failed to subpoena available witnesses;

4. His trial counsel was ineffective during the guilt/innocence phase because he (a) failed to file a motion *in limine* and opened the door to priors; (b) failed to timely object to prosecutorial misconduct when the State was crossing Sullivan; (c) failed to present exculpatory evidence; (d) failed to object to the prosecutor "striking at Defendant over the shoulders of counsel;" (e) failed to object to improper impeachment in the form of a bond report

violation; (f) failed to timely object to a Confrontation Clause violation; (g) failed to object to improper bolstering; and (h) failed "to litigate petitioner's defense of illegal search and seizure to the jury."

5.  His trial counsel was ineffective at the punishment phase because he failed to call a willing character witness and called Sullivan's wife instead; and

6.  The cumulative effect of trial counsel's errors deprived him of his right to constitutionally adequate counsel under the Sixth Amendment.

ECF No. 3 at 6-7, 11-12. The State responded to the petition, arguing that it lacks

merit. ECF No. 14. And Sullivan filed a reply. ECF No. 20.

## Legal Standards and Analysis

The CCA denied Sullivan's claims on the merits. Therefore, he must

overcome the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA)

relitigation bar to obtain relief. Specifically, under 28 U.S.C. § 2254(d):

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may

grant the writ of habeas corpus if the state court arrives at a conclusion opposite to

that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

As for a decision that is based on an unreasonable determination of the facts, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"; federal habeas relief is precluded even if the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). "[I]t is not enough to show that a state court's decision was incorrect or erroneous. Rather a petitioner must show that the decision was objectively unreasonable…" *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (cleaned up). And a determination of a factual issue by a state court is presumed to be correct—a presumption that can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004). Absent express factual findings, a federal court may imply factual findings consistent with the state court's disposition. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983).

Under the AEDPA, "[w]hen a state court has applied clearly established law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fair minded disagreement.'" *Shinn v. Kayer*, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Under § 2254(d)," the reasonableness of the state court decision, and not necessarily whether it is correct, "is 'the only question that matters.'" *Id.* at 526 (quoting *Richter*, 562 U.S. at 102); *Granger v. Director, TDCJ-CID*, 2023 WL 2224444, at *18 (E.D. Tex. Feb. 24, 2023).

1. Sullivan fails to show that the state court unreasonably denied his access to jury questionnaires claim (Claim 1).

Sullivan's first claim arises out of the State's receipt of the jury questionnaire responses nearly a day before Sullivan's counsel got them. ECF No. 3 at 6. Sullivan claims that this violated his right to a fair trial and that the trial court should have quashed the jury. ECF No. 3 at 6. As found by the state appellate court:

> The panel had been qualified and released to return the following day for *voir dire*. The panel's questionnaires were compiled by the district clerk's office, who gave a copy to the district attorney's office shortly after the panel was qualified. The questionnaires at issue contain biographical and other basic information required by the Government Code to accompany a juror summons. *See* TEX. GOV'T CODE ANN. § 60.0132.

> Sullivan's attorney, who had left the courthouse after the panel had returned to return to his office in another county, did not receive the list until he arrived at the trial the next morning. After discovering that the State had been in possession of the list for almost a day, Sullivan objected to the panel and asked that it be quashed. The trial

court denied his motion but gave Sullivan a short period of extra time to review the questionnaires.

*Sullivan*, 622 S.W.3d at 417.

The appellate court denied that Sullivans's right to a fair trial had been violated, reasoning that:

> Sullivan did not ask for extra time in order to review the questionnaires or complain that the time allowed by the trial court was insufficient. Sullivan's complaint is that the entire panel should have been discharged due to the alleged violation.
>
> We have been unable to find any authority regarding this issue and the only authority to which Sullivan cites relates to questions allowed to be asked during *voir dire* pursuant to the Sixth Amendment. *See Franklin v. State*, 138 S.W.3d 351 (Tex. Crim. App. 2004). Even if we were to find that there was some error, we do not agree that the appropriate remedy is to quash the jury panel. Under the facts of this proceeding, the granting of a continuance, if it had been requested, would have been more than adequate to ameliorate any potential harm. Sullivan has failed to make any showing that he was deprived of a fair trial or was denied the ability to ask any particular questions during the *voir dire* process. We do not find that the trial court's denial of Sullivan's motion to quash the jury panel was erroneous. We overrule issue one.

*Id.* at 418.

Because it offered the last reasoned explanation for denying the claim, this Court evaluates the state appellate opinion in determining whether this claim was unreasonably denied. *See*, *e.g.*, *Russell v. Denmark*, 68 F.4th 252, 263 (5th Cir. 2023) (citing *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014)).

It was not. The state appellate court's reasoning and rejection of Sullivan's trial court error claim were reasonable. Sullivan provides no pertinent authority to the contrary, and, like the state court, this Court has not found any. He only cites

cases for the general proposition that due process requires a fair trial in a fair tribunal and an impartial jury. *See* ECF No. 20 at 9 (citing *Morgan v. Illinois*, 504 U.S. 719 (1992); *Ristaino v. Ross*, 424 U.S. 589 (1976)). But the issue here is whether the State's earlier receipt of the questionnaire responses violates those principles. None of the cases relied on by Sullivan suggest that it does.

Further, as the state court pointed out, Sullivan has not shown prejudice. To get federal habeas relief because of a trial court error, the petitioner must show that the error "'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). While Sullivan complains that the State had access to a "treasure trove of information" almost a full day before him, he does not explain how that prejudiced him, especially when his counsel was given additional time to review the questionnaire responses. ECF No. 20 at 7.

Sullivan, speculating that the State might have improperly contacted potential jurors, argues that there is no way to tell beyond a reasonable doubt that the State's early access to the responses did not have an impact on his conviction. ECF No. 20 at 7. But that is not the standard. The burden is on Sullivan, as the habeas petitioner, to prove that trial court error had a substantial and injurious effect or influence in determining the jury's verdict. *See Batiste v. Quarterman*, 622 F.Supp.2d 423, 436 (S.D. Tex. 2008) ("To prevail with a claim concerning these

issues, a habeas corpus petitioner must show that the trial court erred in such a manner as to render the trial as a whole fundamentally unfair.") (citation omitted).

Sullivan fails to do that, and he accordingly fails to show that the state court's rejection of this claim was unreasonable.

2. Sullivan is not entitled to relief on his Fourth Amendment claim (Claim 2).

Sullivan claims that the trial court erred in denying a suppression motion that argued that he was improperly detained and that his vehicle was improperly searched. ECF No. 3 at 6. Because Sullivan challenges the validity of a search and seizure, his claim implicates the Fourth Amendment. *See* U.S. CONST. AMEND. IV.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494 (footnote omitted). The Fifth Circuit "has since interpreted an 'opportunity for full and fair litigation' to mean just that: an opportunity. If a state provides the processes whereby a defendant can obtain a full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (cleaned up).

Texas affords litigants the chance to litigate Fourth Amendment claims fully and fairly through a motion to suppress under Article 28.01 of the Texas Code of

Criminal Procedure, through direct appellate review, and through collateral review proceedings. *See*, *e.g.*, *Manifold v. Director, TDCJ-CID*, 2021 WL 2926296, at *6 (N.D. Tex. June 17, 2021), *rec. accepted* 2021 WL 2920617 (N.D. Tex. July 12, 2021) (citing *Meachum v. Stephens*, 2014 WL 972210, at *8 (N.D. Tex. Mar. 12, 2014)). Sullivan used that process here by filing a motion to suppress. He has failed to establish that he did not have an opportunity to fully and fairly litigate his Fourth Amendment claim, and *Stone* bars it on federal habeas review.

3.  <u>Sullivan fails to establish that his counsel was ineffective (Claims 3-6).</u>

Sullivan claims that his counsel was ineffective in a myriad of ways. To succeed on an ineffective assistance of counsel claim, a petitioner must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 689. "An attorney's actions are deficient only if 'no competent attorney' would have taken the action counsel did." *Neal v. Vannoy*, ---F.4th---, 2023 WL 5425588, at *11 (5th Cir. Aug. 23, 2023) (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011)). And "[i]n making this inquiry, a reviewing court is 'required not simply to give [the] attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did.'" *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)). Further,

counsel's strategic choices "are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Additionally, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove prejudice, the court need not address counsel's performance. *Id.* at 697.

And on federal habeas review, the Court's analysis of ineffective assistance of counsel claims is even more deferential. When the state court has adjudicated the claim on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *See Woods v. Etherton*, 578 U.S. 113 (2016) (citing *Cullen*, 563 U.S. at 190). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Richter*, 562 U.S. at 101.

A. Pretrial Ineffectiveness (Claims 3(a)-(b))

In claim 3(a), Sullivan claims that his trial counsel was ineffective for failing to request copies of the jury questionnaire responses when they were made available. ECF No. 3 at 7. Again, though, as with the trial court error claim, Sullivan fails to show how he was harmed by this. That is, he fails to show a reasonable

probability that the outcome of his trial would have been different had his counsel obtained the questionnaire responses earlier. *See Strickland*, 466 U.S. at 694.

The state court's rejection of this claim was not an unreasonable application of *Strickland*.

In claim 3(b), Sullivan claims that his counsel was ineffective for not subpoenaing witnesses. ECF No. 3 at 7. To prevail on this kind of ineffective assistance of counsel claim, the applicant must "name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

Sullivan faults his counsel for not subpoenaing Heather and Jordan. But Sullivan provides nothing to show that Heather was available to testify at his trial and would offer favorable testimony; thus, he fails to show any prejudice from his counsel's failure to subpoena her.

As for Jordan, Sullivan provides an affidavit in which Jordan states that he informed Sullivan's counsel that he was willing and available to testify if counsel would let him know when. ECF No. 13-26 at 59. But the record plainly tells a different story. At the time of trial, Jordan could not be reached and was not available as a witness. Sullivan testified that Jordan moved out a couple of weeks before the trial and that he had not talked to him since. ECF No. 13-19 at 22-24. Further, in an affidavit submitted in the state habeas proceedings, Sullivan's

counsel states that "the witness did not appear for a pre-trial meeting and was never heard from again." ECF No. 13-26 at 57.

So, Sullivan has not shown that Jordan would have testified at his trial, and he therefore fails to show prejudice or that the state court's rejection of this claim was an unreasonable application of *Strickland*.

### B. Guilt/Innocence Ineffectiveness (Claims 4(a)-(h)).

In claim 4(a), Sullivan faults his trial counsel for not filing a *motion in limine* regarding his prior convictions and opening the door to evidence of his convictions through his direct examination of Sullivan. ECF No. 3 at 7. Sullivan fails to show that the state court's rejection of this claim was unreasonable or a misapplication of *Strickland*.

Prior to trial, the State sent notice of its intent to introduce evidence of extraneous matters. ECF No. 13-8 at 34-35. Then, in his direct examination of Sullivan, Sullivan's counsel highlighted two 2004 Tarrant County convictions[1] and a 2001 Johnson County conviction for possession of methamphetamine, which were among the offenses the State had notified Sullivan's counsel it intended to introduce. ECF No. 13-19 at 18-19. As explained in more detail below, given Sullivan's decision to testify and his assertions that the drugs were not his and that he did not intend to sell or deliver any drugs, these convictions were admissible

---

[1] Though adjudicated in 2004, the offense conduct occurred in 1998. ECF No. 13-19 at 21.

under Rule 404(b) to show his intent and to rebut his theory that he came upon the drugs by accident.

Knowing those convictions were admissible, Sullivan's counsel could have reasonably decided to present that evidence on direct to soften its impact, as well as to show that Sullivan participated in rehab, successfully completed his probation, had not been charged with new offenses since 2001, and was employed and working to support his family. ECF No. 13-19 at 11-24. Sullivan fails to show that his counsel's decision to present the convictions on direct was not part of a reasonable trial strategy, and he therefore fails to show ineffectiveness. *See Smith v. Director, TDCJ-CID*, 2022 WL 571833, at *14 (E.D. Tex. Feb. 3, 2022), *rec. accepted* 2022 WL 567835 (E.D. Tex. Feb. 24, 2022) ("The intermediate appellate court concluded that as counsel believed the trial court would have admitted evidence of the prior convictions, counsel's strategic decision to ask about the convictions on direct examination did not fall below an objective standard of reasonableness. In light of the deference due counsel's strategic decisions, this decision was not contrary to or an unreasonable application of clearly established federal law. It was reasonable for counsel to not want the jury to believe petitioner was trying to hide the convictions.")

As for a motion *in limine*, the State disclosed 11 felonies and misdemeanors that it might introduce at trial, which, in addition to the drug offenses discussed above, included various convictions related to the possession of fraudulent or

stolen checks in 2001, which the State delved into in depth in its cross of Sullivan. ECF No. 13-19 at 32-42.

Sullivan questions the admissibility of these convictions under Texas Rule of Evidence 609. That rule generally allows evidence of prior felony convictions to attack a witness's character for truthfulness, subject to exceptions. Convictions that are older than ten years are only admissible if the probative value of the evidence substantially outweighs its prejudicial effect. TEX. R. EVID. 609(b). And if "probation has been satisfactorily completed for the conviction, and the person has not been convicted of a later crime that was classified as a felony or involved moral turpitude, regardless of punishment," the convictions are inadmissible. *Id.* at (c).

At least as to the drug convictions, Sullivan's reliance on Rule 609 is misplaced. This evidence was admissible under Texas Rule of Evidence 404(b), which allows evidence of other crimes to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Because Sullivan's defense was that he stumbled onto the methamphetamine by accident and lacked the intent to possess it or deliver it, his prior drug convictions involving methamphetamine possession were admissible to show otherwise. *See*, *e.g.*, *United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006) ("Arnold first offers that the 1995 conviction does not show his constructive possession of the drugs found in the house at 418 Dewey Street. He questions the relevance of this evidence, arguing that the 1995 conviction is insufficiently similar to Count 1 to be probative of his conduct in 2004. He further claims that nine years is simply too

long a gap between his prior bad act and Count 1. We reject this argument because Arnold made his intent and knowledge regarding the crack found in the house the critical issues at trial. Intent and knowledge are two of the purposes cited in Rule 404(b) for introduction of evidence of past crimes.").

And, because prior crimes admitted under Rule 404(b) are not offered to show a witness's untruthful character, they are not subject to the limits on such evidence in Rule 609(b)-(c). *See*, *e.g.*, *United States v. Rubio-Gonzalez, 674 F.2d 1067, 1075 (5th Cir. 1982)* ("Although one of the prior acts occurred slightly more than ten years prior to trial, and was hence outside the time limit provided for in Fed. R. Evid. 609(b), evidence submitted under Rule 404(b) is not controlled by the ten-year limit specified in Rule 609(b), which applies to the quite different matter of admitting evidence of prior convictions to impeach a witness."). So, as to the prior drug convictions, an evidentiary motion would have been futile, and counsel is not ineffective for failing to file meritless motions. *Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984)*.

Regarding the 2001 charges of forgery and receiving/stealing stolen checks, it is less apparent how these would come in under Rule 404(b). And because, as best the Court can tell, Sullivan satisfactorily completed probation for these offenses (ECF No. 13-19 at 20), any convictions related to the charges would not be admissible under Rule 609, either. *See* TEX. R. EVID. 609(c).

Nevertheless, even if Sullivan's counsel could have kept this evidence out, Sullivan does not persuasively argue that there is a reasonable probability that the

result of the proceeding would have been different given all the other evidence against him, including the evidence of his prior drug-related criminal convictions. *Strickland*, 466 U.S. at 694. At the least, reasonable jurists could debate the issue. *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) ("An application of law to facts will not be deemed unreasonable, unless reasonable jurists 'would be of one view that the state court ruling was incorrect.'") (citation omitted). In short, Sullivan has not shown the state court unreasonably applied *Strickland* in denying this claim.

In claim 4(b), Sullivan argues that his counsel should have objected to prosecutorial misconduct for questioning him about the prior offenses of forgery and stealing/receiving stolen checks, maintaining that those charges were dismissed. ECF No. 3 at 7; ECF No. 20 at 11. But even if counsel was ineffective, as with the previous claim, given the other prior convictions and evidence against him, Sullivan fails to show prejudice. At the least, reasonable jurists could debate the issue, so Sullivan is not entitled to federal habeas relief in relation to this claim. *Clark*, 202 F.3d at 764.

In claim 4(c), Sullivan faults his trial counsel for not presenting exculpatory evidence in the form of the bill of sale of the jeep from Sullivan to Jordan. ECF No. 3 at 7, 12. He points out that the State crossed him on this issue, questioning where the bill of sale was, and, because his attorney did not introduce it, he argues that he could not persuasively counter the insinuation that no bill existed. ECF No. 20 at 15.

18

But even assuming ineffectiveness, Sullivan has not shown prejudice. The jury already heard Sullivan's testimony that he sold the jeep and that there was a bill of sale for that transaction. That additional corroborating evidence would have led to a reasonable probability of a different result is simply speculative. This is especially true because, even assuming the jury believed that a bill of sale existed, this would not explain Sullivan's possession of the drugs. At bottom, Sullivan has failed to show that the state court's rejection of this claim was an unreasonable application of *Strickland.*

In claim 4(d), Sullivan claims that the prosecutor engaged in misconduct by suggesting during closing argument that Sullivan's story of being at the motel on the day in question to pick up Heather was fabricated because it was only disclosed after Sullivan met with his counsel. ECF No. 3 at 12; ECF No. 20 at 12; ECF No. 13-19 at 111-112.[2] Sullivan claims that this behavior amounts to "striking the defendant over the shoulders of counsel," and faults his counsel for not objecting to it. ECF No. 20 at 12-13.

Sullivan has not shown his counsel was ineffective for not objecting to this line of argument. By taking the stand and telling his story, Sullivan opened himself up to the State's arguments and questions about his testimony, including the

---

[2] Specifically, the State said the following in its closing argument: "Do you want us to prosecute it to the fullest extent of the law, possession with intent to deliver four to 200 grams and then possession less than a gram of amphetamine, or, do you want us to listen to crazy stories they come up with at the end of trial that nobody's ever heard of until today? Until they are coached to say them today. We've never heard that." ECF No. 13-19 at 111-12.

argument that Sullivan's late disclosure of his reason for being at the motel was evidence of its falsity. And while "a prosecutor runs a risk of improperly striking at a defendant over the shoulder when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character," *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), that is not what happened here. The argument went directly to Sullivan's testimony, was not "made in terms of defense counsel personally," and did not "explicitly impugn defense counsel's character." *Id*. at 259. An objection would have been futile, and counsel is not required to make futile objections.

But even if the objection had merit, decisions to object during closing argument are matters of trial strategy that are presumed to be reasonable under *Strickland*. *Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992). And Sullivan has not rebutted that presumption here. The insinuation that Sullivan concocted the meeting-a-friend-at-the-motel story was established during the State's cross of Sullivan. ECF No. 13-19 at 43. Accordingly, his counsel might reasonably have concluded that further objection during closing would serve little or no purpose, as the argument was already before the jury. In short, Sullivan fails to show that the state court's rejection of this claim was an unreasonable application of *Strickland*.

In claim 4(e), Sullivan avers that his counsel should have objected to improper impeachment, namely, a report showing that Sullivan failed a drug test while on bond, which was used to impeach Sullivan's testimony that he had not used drugs in 2018. ECF No. 3 at 12. But Sullivan's counsel *did* object to the report

on hearsay grounds—an objection that the trial court initially sustained but then overruled. ECF No. 13-19 at 75-76. He also objected that the report ran afoul of Rule 403, but the trial court overruled the objection. ECF No. 13-19 at 76.

Sullivan maintains, however, that those were not the correct objections. He claims that the report was improper character evidence, but the Court cannot agree. The evidence was not used to impugn Sullivan's character for truthfulness but to impeach by contradiction on a material issue. *See United States v. Lopez, 979 F.2d 1024, 1034 (5th Cir. 1992).*

Because Sullivan fails to show how his counsel was ineffective in relation to the bond violation report, the state court did not unreasonably apply *Strickland* in denying this claim.

In claim 4(f), Sullivan faults his counsel for failing "to object in timely manner to confrontation violation in allowing state witness Mr. Cipriano to testify about findings on pre-trial bond drug test." ECF No. 3 at 12.

Cipriano, who testified and was cross examined by Sullivan's counsel, conducted the drug test in question, which turned up presumptively positive. ECF No. 13-19 at 74. Cipriano then sent the test to the lab to be confirmed, which it was, and all of this is indicated in the bond violation report that Cipriano prepared. ECF No. 20 at 30. Sullivan argues that it violated his rights under the Confrontation Clause to introduce evidence of the confirmation of the presumptive positive test—whether through the report or through Cipriano's testimony—because Cipriano did not conduct the lab testing.

But without deciding the merits of the Confrontation Clause argument, Sullivan fails to show any prejudice under *Strickland*. Putting the evidence of the failed drug test aside, there was ample evidence of Sullivan's guilt. It would be speculation to guess that, had counsel successfully objected to evidence about the confirmation of the failed drug test, there is a reasonable probability that the result of the proceeding would have been different. And that kind of speculation is insufficient under *Strickland. See*, *e.g.*, *Rangel v. TDCJ-CID*, 2022 WL 16919355, at *3 (N.D. Tex. Nov. 14, 2022) ("Even assuming that counsel's conduct fell below an objective standard of reasonableness, and it did not, any notion that Petitioner was harmed as a result is pure speculation. Petitioner has not shown that the state habeas court's denial of relief was not just incorrect, but unreasonable.") (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Or, at the least, reasonable jurists could debate whether Sullivan showed prejudice, and he therefore fails to show that the state court unreasonably applied *Strickland* in denying this claim.

In claim 4(g), Sullivan complains that his counsel failed to object to improper bolstering. ECF No. 3 at 12. "'[B]olstering' occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993) (citation omitted).

Sullivan claims that it was improper bolstering when the State asked Cipriano on redirect whether he thought Sullivan could be lying about other things because of his failed test result. ECF No. 13-26 at 44; ECF No. 13-19 at 80-81.

22

Sullivan does not explain how this is bolstering, and it is not apparent to the Court. At any rate, counsel objected to the question as argumentative, and the trial court sustained the objection. ECF No. 13-19 at 81. Sullivan does not show how he was prejudiced under such circumstances.

Sullivan also claims that it was bolstering when the State, during its closing argument, said: "members of the jury, that man, Ronnie Sullivan, tells you that the sky is blue, you better go out there and double-check. Almost nothing that he told you on the stand is believable . . . . If Mike Cipriano, his community supervision officer, wasn't enough for you, I don't know what will be." ECF No. 13-19 at 94.

Under Texas law, "[a] prosecutor may argue his opinion concerning a witness's credibility or the truth of [a] witness's testimony only if the opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony." *Gonzalez v. State*, 337 S.W.3d 473, 483 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985)); *see also Graves v. State*, 176 S.W.3d 422, 431 (Tex. App—Houston [1st Dist.] 2004, pet. struck) ("Jury argument that vouches for or questions the credibility of a witness is proper if it involves a reasonable deduction from the evidence.").

Here, to the extent that the State's closing argument could be considered an opinion on Cipriano's veracity, Sullivan fails to show that it was not a reasonable deduction from the evidence. He points to no evidence contradicting the truthfulness of Cipriano's testimony. Nor does he argue that Cipriano had any

23

reason to be untruthful. Because Sullivan fails to show that an opinion about Cipriano's veracity was not based on a reasonable deduction from the evidence, he in turn fails to show that any objection would have been successful, much less a reasonable probability that the result of the proceedings would have been different had an objection been sustained. *See*, *e.g.*, *Davis v. Stephens*, 2013 WL 6498963, at *10 (S.D. Tex. Dec. 11, 2013) ("[P]etitioner fails to show that, had counsel objected, the objections would have been sustained and the evidence excluded. Moreover, petitioner fails to show that, but for counsel's failures to object, there is a reasonable probability that the results of his trial would have been different. In short, petitioner establishes neither deficient performance nor harm under *Strickland*.").

In sum, Sullivan has not shown that the state court unreasonably applied *Strickland* in rejecting this claim.

Finally, in claim 4(h), Sullivan says this his counsel was ineffective for not "litigating [his] defense of illegal search and seizure to the jury." ECF No. 3 at 12. But the record belies this claim. Sullivan's counsel heavily litigated the legality of the alleged search and seizure—in fact, he treated it as the main issue in the case. He filed a motion to suppress the search of Sullivan's vehicle. *See* ECF No. 13-8 at 20. He questioned the jury panel on the issue. ECF No. 13-18 at 70-80. He attempted, through cross examination of State witnesses, to show that Sullivan was seized without reasonable suspicion and that he did not consent to a search of his vehicle. ECF No. 13-18 at 129-133, 136, 167-172. He emphasized during both his

opening and closing arguments that the legality of the search was a key issue, and one that should be decided in Sullivan's favor. ECF No. 13-18 at 106-107; ECF No. 13-19 at 100-106. The state court did not unreasonably apply *Strickland* in rejecting this claim.

### C.  Punishment Phase (Claim 5)

Sullivan claims that his counsel was ineffective for calling his wife as a character witness instead of a former employer.  ECF No. 3 at 12. He offered the employer's statement during the state habeas proceedings. ECF No. 13-26 at 66. The employer says that she knew Sullivan as an employee for six months preceding his trial. ECF No. 13-26 at 66. She generally found him to be of good moral character and opines that he should be given a second chance. ECF No. 13-26 at 66.

 "Because decisions regarding the questioning and cross-examination of witnesses are strategic, they usually 'will not support an ineffective assistance claim.'" *Tablet v. Lumpkin*, 543 F.Supp.3d 461, 509 (W.D. Tex. 2021) (citing *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014)). "To establish deficient performance, Petitioner must not only rebut the presumption that counsels' decisions were based on sound trial strategy; he must also show that counsels' performance fell below an 'objective standard of reasonableness.'" *Id.* (citing *Strickland*, 466 U.S. at 687-88).

Here, Sullivan has not rebutted the presumption this his counsel's decision was based on sound trial strategy, such as presenting a character witness who had

known Sullivan for decades, raised a family with him, and could offer a good picture of his character as opposed to an individual who had only known Sullivan for six months in the employment context.

The state court did not unreasonably apply *Strickland* in rejecting this claim.

### D. Cumulative Error (Claim 6)

In his final claim for relief, Sullivan argues that the cumulative effect of his counsel's errors deprived of him of constitutionally adequate counsel. *See* ECF No. 3 at 12; ECF No. 20 at 19.

But "[i]n order for cumulative error analysis to apply, [a defendant] must have something to cumulate." *United States v. $9,041,598.68*, 163 F.2d 238, 253 (5th Cir. 1998). As discussed throughout these findings, conclusions, and recommendation, Sullivan has not shown any errors of constitutional significance to cumulate. Therefore, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

## Recommendation

For the foregoing reasons, the Court should **DENY** Sullivan's § 2254 petition.

Signed September 6, 2023.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

26

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).